BLAKEMAN LAW
Benjamin Blakeman (SBN: 60596)
8383 Wilshire Blvd., Suite 510
Beverly Hills, CA 90211
Telephone: (213) 629-9922
Facsimile: (213) 232-3230
Email: ben@lifeinsurance-law.com

Attorneys for Plaintiff,
DONNA CONNARY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA CONNARY, on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>HILL'S PET NUTRITION, INC. and COLGATE-PALMOLIVE COMPANY.<br><br>          Defendants. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Donna Connary ("Plaintiff") brings this action on behalf of herself and all others similarly situated, including a proposed class of nationwide consumers and a subclass of California consumers defined herein, against Hill's Pet Nutrition, Inc. and Colgate-Palmolive Company ("Defendants") and hereby alleges the following:

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

**NATURE OF THE ACTION**

1.     The products at issue in this Class Action Complaint are various Science Diet and Prescription Diet brands (collectively, the "Products") that Defendants recalled on January 31, 2019 and further recalled to include additional Products on March 20, 2019.

2.     The Products were recalled because, contrary to their labeling, advertising, and marketing campaign which represents and warrants to consumers that the Products are safe, healthy, and/or specifically formulated for the unique health needs of canines, Defendants actually formulated, manufactured, distributed, and sold Products that contain an amount of Vitamin D that is extremely dangerous for dogs to consume.

3.     This amount of Vitamin D poses substantial and unreasonable health risks to dogs after exposure, including symptoms such as vomiting, loss of appetite, increased thirst, increased urination, excessive drooling, and weight loss.  Prolonged exposure can lead to serious health issues in dogs including renal dysfunction, which can cause death.

4.     As a result of Defendants' false and misleading representations and warranties which conveyed that the Products were safe, many dog owners including Plaintiff and members of the Class and Subclass defined herein, watched as their dogs suffered from Vitamin D poisoning and its related symptoms after consuming the Products.  As a result of this Vitamin D poisoning, many dogs have required veterinary treatment, have had to take prescription medications, and many of them have died, resulting in their owners incurring significant monetary losses.

5.     Defendants' failed to include all of the dangerous and contaminated Products in the initial January 31, 2019 recall, as shown by its subsequent expansion of the recall on March 20, 2019 to include additional Products despite publishing a video to Hill's Pet Nutrition, Inc.'s website stating "[…] we isolated and identified the issue. We now have tighter quality controls in place to prevent this from happening

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

again. By feeding your pet Hill's, you've placed your trust in us and we are working hard to ensure that your trust is well placed."[1]

6.    Furthermore, Defendants' recall of the Products was not timely, as Defendants knew or should have known prior to the January 31, 2019 recall that its Products contained dangerous levels of Vitamin D.

7.    First, Defendants claim to subject their suppliers and raw material ingredient providers with regular quality assurance and safety checks.[2]

8.    Second, Defendants were aware prior to January 31, 2019 that Vitamin D toxicity was a well-known risk, as on December 3, 2018 the FDA warned consumers of several other brands of dog food that contained toxic levels of Vitamin D.[3]

9.    As such, the Products' hazardous qualities and the risk of exposure was significantly exacerbated by Defendants' unjustified delay in warning consumers that the Products were dangerous for consumption by dogs because they contain dangerous levels of Vitamin D.

## PARTIES

10.    Plaintiff Donna Connary, a resident of Temecula, Riverside County, California, regularly purchased several of the Products from retailers in Riverside County, California within the past three years, and also between October 2018 and February 2019.  Plaintiff purchased the Products because she believed that they safe for consumption by her dogs Buschka La Rue and Olive, were more nutritious and superior to other brands of dog food, resulting in Plaintiff paying a premium price for the Products, and contained ingredients or were formulated to satisfy her dogs' specific health and dietary needs.  Plaintiff's dogs became ill after consuming the Products in December 2018 and showed signs of Vitamin D poisoning until Plaintiff switched to a different brand of food in February 2019. Plaintiff was unaware that the Products were the cause until shortly before filing this Complaint.

[1] *See* https://www.hillspet.com/productlist/jan-31-press-release.
[2] *See* https://www.hillspet.com/about-us/quality-and-safety.
[3] *See* https://www.fda.gov/animalveterinary/newsevents/ucm627485.htm.

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

11.     Defendant Hill's Pet Nutrition, Inc. is a Delaware corporation with its principal place of business at 400 SW 8th Avenue, Topeka, Kansas 66603.

12.     Defendant Colgate-Palmolive Company is a Delaware corporation with its principle place of business at 300 Park Avenue, New York, New York 10022. Colgate-Palmolive Company is the parent company of Hill's Pet Nutrition, Inc. and exercises control over Hill's Pet Nutrition, Inc. and derived profit from the sale of the Products.   Specifically, Colgate-Palmolive Company's 2018 10-K filed states "Colgate, through its Hill's Pet Nutrition segment…is a world leader in specialty pet nutrition products for dogs and cats" and states "Pet Nutrition products include specialty pet nutrition products manufactured and marketed by Hill's Pet Nutrition." Furthermore, according to Colgate-Palmolive's 2018 10-K, "[n]et sales for Hill's Pet Nutrition were [$2.388 billion] in 2018," which includes net sale proceeds from the Products.

13.     Defendants formulated, designed, manufactured, advertised, marketed, labeled, offered for sale, sold, and distributed pet food products to consumers, including the Products, throughout the United States and California through storefront pet food retailers, veterinarians, and Internet retailers, represented and warranted that their Products are superior than other brands of dog food as described herein, and charged a premium price for them.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because there are 100 or more class members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and there is minimal diversity because Plaintiff and at least one Defendant are citizens of different states.

15.     The Court has personal jurisdiction over Defendants because they regularly conduct a substantial amount of business in the Central District of California, intentionally and purposefully placed the Products into the stream of commerce within

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

the Central District of California and throughout the United States, and their wrongful conduct, as alleged herein, was carried out in California, including in this District, and throughout the United States.

16.    Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred within this District. Defendants transacted business and advertised in this District and have received substantial revenue and profits from the sale of the Products in this District, including from sales to Plaintiff and members of the Class and Subclass. Plaintiff's dogs also consumed the Products in this District and got sick in this District.

## COMMON FACTUAL ALLEGATIONS

### Defendant's Recall

17.    On January 31, 2019 Defendants announced in a press release that they were recalling certain of their Products due to a "supplier error," and indicated that consumption of the Products could be dangerous to dogs due to them containing toxic levels of Vitamin D, and later expanded that recall on March 20, 2019 to include additional Products.[4]

18.    Defendants claimed "While vitamin D is an essential nutrient for dogs, ingestion of elevated levels can lead to potential health issues depending on the level of vitamin D and the length of exposure, and dogs may exhibit symptoms such as vomiting, loss of appetite, increased thirst, increased urination, excessive drooling, and weight loss. When consumed at very high levels, vitamin D can in rare cases lead to potentially life threatening health issues in dogs, including renal dysfunction."[5]

[4] *See* https://www.hillspet.com/productlist.
[5] *Id.*

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

***Defendants' False and Misleading Misrepresentations and Warranties***

19.     Defendants formulate, manufacture, label, advertise, market, distribute and sell the Products on a global scale and are one of the largest pet food suppliers in the United States.

20.     As part of their pervasive labeling, advertising, and marketing scheme, Defendants claim to "make nutrition a cornerstone of veterinary medicine"[6] and sell their Products through a nationwide distribution network of retail stores including but not limited to Petco, PetSmart, and Walmart, veterinary clinics, and Internet retailers such as Amazon.com and Chewy.com.

21.     Defendants' Products are designed to address nutritional deficiencies and/or other specifically targeted health issues, and Defendants charge a premium price for their Products based on their representations and warranties that they are superior to other brands of dog food.

22.     The Products encompass those included in Defendants' January 31, 2019 recall and subsequent March 20, 2019 expansion of that recall, which were published on both Hill's Pet Nutrition, Inc.'s website[7] and the U.S. Food and Drug Administration's ("FDA") website[8], and include the following:

---

6 *See* https://www.hillspet.com/about-us/our-company.

7 *See* https://www.hillspet.com/productlist.

8 *See* https://www.fda.gov/Safety/Recalls/ucm634087.htm.

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

| Product Name | SKU Number | Date Code / Lot Code |
|---|---|---|
| Hill's® Prescription Diet® k/d® Kidney Care with Lamb Canned Dog Food, 13oz, 12-pack | 2697 | 102020T25 |
| Hill's® Science Diet® Adult Perfect Weight Chicken & Vegetable Entrée dog food 12 x 12.8oz cans | 2975 | 092020T28 |
| Hill's® Prescription Diet® c/d® Multicare Urinary Care Chicken & Vegetable Stew Canned Dog Food, 5.5oz, 24-pack | 3388 | 102020T18 |
| Hill's® Prescription Diet® i/d® Low Fat Canine Rice, Vegetable & Chicken Stew 24 x 5.5oz cans | 3391 | 092020T27 |
| Hill's® Prescription Diet® r/d® Canine 12 x 12.3oz cans | 7014 | 092020T28<br>102020T27<br>102020T28 |
| Hill's® Science Diet® Adult Beef & Barley Entrée Canned Dog Food, 13oz, 12-pack | 7039 | 092020T31<br>102020T21 |
| Hill's® Science Diet® Adult 7+ Healthy Cuisine Roasted Chicken, Carrots & Spinach Stew dog food 12 x 12.5oz cans | 10449 | 092020T28 |
| Hill's® Science Diet® Healthy Cuisine Adult Braised Beef, Carrots & Peas Stew Canned Dog Food, 12.5oz, 12-pack | 10451 | 092020T28 |
| Hill's® Prescription Diet® c/d® Multicare Canine Chicken & Vegetable Stew 12.5oz | 3384 | 092020T29<br>102020T10<br>102020T25 |
| Hill's® Prescription Diet® i/d® Canine Chicken & Vegetable Stew 12.5oz | 3389 | 092020T28<br>102020T24<br>102020T25<br>102020T04<br>102020T10<br>102020T19<br>102020T20 |
| Hill's® Prescription Diet® i/d® Canine Chicken & Vegetable Stew 5.5oz | 3390 | 102020T11<br>112020T23<br>122020T07 |
| Hill's® Prescription Diet® z/d® Canine 5.5oz | 5403 | 102020T17<br>112020T22 |
| Hill's® Prescription Diet® g/d® Canine 13oz | 7006 | 092020T22<br>112020T19<br>112020T20 |
| Hill's® Prescription Diet® i/d® Canine 13oz | 7008 | 092020T21<br>092020T30<br>102020T07<br>102020T11<br>112020T22<br>112020T23 |
| Hill's® Prescription Diet® j/d® Canine 13oz | 7009 | 112020T20 |
| Hill's® Prescription Diet® k/d® Canine 13oz | 7010 | 102020T10<br>102020T11 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

| | | |
|---|---|---|
| Hill's® Prescription Diet® w/d® Canine 13oz | 7017 | **102020T24**<br>**102020T25**<br>**112020T09**<br>**112020T10**<br>092020T30<br>102020T11<br>102020T12 |
| Hill's® Prescription Diet® z/d® Canine 13oz | 7018 | 102020T04<br>112020T22 |
| Hill's® Prescription Diet® Metabolic + Mobility Canine Vegetable & Tuna Stew 12.5oz | 10086 | 102020T05<br>102020T26 |
| Hill's® Prescription Diet® w/d® Canine Vegetable & Chicken Stew 12.5oz | 10129 | **112020T11**<br>**112020T05**<br>102020T04<br>102020T21 |
| Hill's® Prescription Diet® i/d® Low Fat Canine Rice, Vegetable & Chicken Stew 12.5oz | 10423 | **092020T27**<br>**092020T28**<br>**092020T24**<br>102020T17<br>102020T19<br>112020T04 |
| Hill's® Prescription Diet® Derm Defense® Canine Chicken & Vegetable Stew 12.5oz | 10509 | 102020T05 |
| Hill's® Science Diet® Adult 7+ Small & Toy Breed Chicken & Barley Entrée Dog Food 5.8oz | 4969 | 102020T18 |
| Hill's® Science Diet® Puppy Chicken & Barley Entrée 13oz | 7036 | 102020T12 |
| Hill's® Science Diet® Adult Chicken & Barley Entrée Dog Food 13oz | 7037 | **092020T22**<br>102020T13<br>102020T14<br>112020T23<br>112020T24 |
| Hill's® Science Diet® Adult Turkey & Barley Dog Food 13oz | 7038 | 102020T06 |
| Hill's® Science Diet® Adult Chicken & Beef Entrée Dog Food 13oz | 7040 | **112020T10**<br>**112020T11**<br>102020T13 |
| Hill's® Science Diet® Adult Light with Liver Dog Food 13oz | 7048 | 112020T19 |
| Hill's® Science Diet® Adult 7+ Chicken & Barley Entrée Dog Food 13oz | 7055 | 092020T31<br>102020T13 |
| Hill's® Science Diet® Adult 7+ Beef & Barley Entrée Dog Food 13oz | 7056 | **102020T28**<br>092020T31<br>112020T20<br>112020T24 |
| Hill's® Science Diet® Adult 7+ Turkey & Barley Entrée 13oz | 7057 | 112020T19 |
| Hill's® Science Diet® Adult 7+ Healthy Cuisine Braised Beef, Carrots & Peas Stew dog food 12.5oz | 10452 | **102020T28**<br>102020T14<br>102020T21 |
| Hill's® Science Diet® Adult 7+ Youthful Vitality Chicken & Vegetable Stew dog food 12.5oz | 10763 | 102020T04<br>102020T05<br>112020T11 |

COMPLAINT

23. As part of their pervasive labeling, advertising, and marketing campaign, Defendants represent that the Products provide "[n]utrition that can transform the lives of pets and comfort the pet parents and vets who care for them."[9]

24. In order to justify charging a price premium for their Products, and to convince consumers into paying these prices, Defendants tout that "[w]e only accept ingredients from suppliers whose facilities meet stringent quality standards and who are approved by Hill's. Not only is each ingredient examined to ensure its safety, we also analyze each product's ingredient profile for essential nutrients to ensure your pet gets the stringent, precise formulation they need."[10]

25. Defendants then claim "We conduct annual quality systems audits for all manufacturing facilities to ensure we meet the high standards your pet deserves. We demand compliance with current Good Manufacturing Practices (cGMP) and Hill's high quality standards, so your pet's food is produced under clean and sanitary conditions."[11]

26. To further reinforce the idea that the Products are superior to other dog foods and safe for consumption, Defendants claim that "[w]e conduct final safety checks daily on every Hill's pet food product to help ensure the safety of your pet's food. Additionally, all finished products are physically inspected and tested for key nutrients prior to release to help ensure your pet gets a consistent products bag to bag."[12]

27. Defendants then state that their Products contain the "precise balance" of nutrients needed for a healthy dog: "Guided by science, we formulate our food with precise balance so your pet gets all the nutrients they need — and none they don't."[13]

---

[9] *See* https://www.hillspet.com/dog-food.
[10] https://www.hillspet.com/about-us/quality-and-safety.
[11] *Id.*
[12] *Id.*
[13] *See* https://www.hillspet.com/about-us/nutritional-philosophy.

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

28.     In generally describing their Products, Defendants make a "commitment to quality" with more than 220 veterinarians, food scientists, technicians, and PhD nutritionists working together to develop products that are safe, nutritious, and superior to other brands.[14]

29.     As shown herein, the Products include those from both Defendants' Science Diet and Prescription Diet brands.

30.     Defendants claim that Products within the Science Diet brand will "[f]eed your dog's best life with biology-based nutrition" and that "we make our foods using only high-quality ingredients."[15]

31.     Furthermore, Defendants claim on the Science Diet Products' labels that the brand is "VETERINARIAN RECOMMENDED."



---

14 *Id.*
15 *See* https://www.hillspet.com/science-diet/dog-food.

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

32.    Defendants claim that it manufactures the Prescription Diet Products in an alliance with veterinarians which emphasizes a "unique position to find a solution" to the various and sundry dietary and health issues that are typical to dogs.[16]

33.    To reinforce the notion that the Prescription Diet brand Products are uniquely formulated for targeted health concerns, Defendants claim on Prescription Diet Products' labels that they provide "CLINICAL NUTRITION" or "THERAPEUTIC DOG NUTRITION" and are designed to address health conditions including but not limited to kidney care, metabolic care, digestive care, skin/food sensitivities, urinary care, joint care, and aging.



---

16 *See* https://www.hillspet.com/prescription-diet/dog-food.

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

34.    As demonstrated by the recall of at least 675,000 (13.5 million cans), resulting in Plaintiff and members of the Class and Subclasses' dogs becoming ill and/or dying as a result of Vitamin D toxicity and its related symptoms, Defendants' various above-cited representations and warranties about their Products, the reliability of their ingredients and suppliers, and their quality assurance and safety protocols are false and misleading.

### Defendants' Price Premium

35.    Defendants charged a premium for its Products because they knew that the representations and warranties they made to consumers about their various health and nutritional benefits, along with claims regarding their use of well- inspected ingredients, were important to consumers, inclusive of Plaintiff and members of the Class and Subclass, and that such representations and warranties would induce consumers to pay a premium price for the Products over other brands of dog food.

36.    The health and safety of dogs is extremely important to consumers, and as such they are willing to pay a premium for Defendants' Products because they represent and warrant that the Products are safe, healthy, nutritious, formulated for targeted health needs, and meet certain ingredient supply, quality, testing and oversight, and manufacturing standards.

37.    Defendants' price premium is shown below[17]:

---

[17] Pricing information obtained from https://www.chewy.com.

| Brand | Quantity | Price | Unit Price |
|---|---|---|---|
| Hill's Pres. Diet i/d Canine Chicken & Vegetable Stew 12.5 oz. | 12 cans | $39.99 | $3.33 per can $0.27 per ounce |
| Hill's Pres. Diet w/d Canine Vegetable & Chicken Stew 12.5 oz. | 12 cans | $38.99 | $3.25 per can $0.26 per ounce |
| Hill's Science Diet Adult Chicken & Barley Entrée Dog Food 13 oz. | 12 cans | $22.20 | $1.85 per can $0.14 per ounce |
| Hill's Science Diet Adult 7+ Beef & Barley Entrée Dog Food 13 oz. | 12 cans | $22.20 | $1.85 per can $0.14 per ounce |
| Purina ONE SmartBlend Classic Ground Beef and Brown Rice Adult 13 oz. | 12 cans | $12.67 | $1.06 per can $0.08 per ounce |
| Iams ProActive Health Adult Chicken and Whole Grain Rice Pate 13 oz. | 12 cans | $16.80 | $1.40 per can $0.11 per ounce |
| Nature's Recipe Easy-to-Digest Chicken, Rice & Barley Recipe Cuts in Gravy Stew 13.2 oz. | 12 cans | $13.99 | $1.17 per can $0.09 per ounce |
| Purina Dog Chow High Protein Chicken Classic Ground Canned Dog Food 13 oz. | 12 cans | $12.60 | $1.05 per can $0.08 per ounce |

38.    Because the Products contained dangerous levels of Vitamin D which endangered the health of dogs and ultimately led to Plaintiff's and members of the Class and Subclass' dogs to become ill or die, they were diminished in value or worthless as a dog food.

39.    As a direct and proximate result of Defendants' false and misleading representations and warranties, negligence in carrying out their duty to provide consumers with safe and healthy dog food as advertised, breach of warranties, unfair practices, and other unlawful conduct detailed herein, Plaintiff and members of the Class and Subclass incurred actual damages and/or other economic losses, including

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

the cost of paying for the Products, veterinary bills, prescription costs and/or funeral and burial costs, among other damages to be proven at trial.

**MS. CONNARY'S EXPERIENCE WITH THE RECALLED PRODUCTS**

40.     Plaintiff is the owner of two dogs, a 9-year old Terrier-Schnauzer mix named Buschka La Rue, and a 3-year old Terrier Chihuahua mix named Olive.

41.     Plaintiff started feeding her dogs Hill's Science Diet Healthy Cuisine Adult Braised Beef, Carrots & Peas Stew, Hill's Science Diet Adult Chicken & Beef Entrée, and Hill's Science Diet Adult 7+ Small & toy Breed Chicken & Barley Entrée Dog Food in or around October 2018.

42.     Plaintiff purchased the identified Products from retail locations near her home in Temecula, California up until February 2019 because the labeling, advertising, and marketing for the Products represented to her that they were at all times safe for her dogs to eat.

43.     Buschka La Rue would typically eat 4-5 cans of either the Hill's Science Diet Healthy Cuisine Adult Braised Beef, Carrots & Peas Stew canned dog food and/or Science Diet Adult Chicken & Beef Entrée Canned Dog Food per day per week. Olive would typically eat 4-5 cans of Hill's Science Diet Adult 7+ Small & toy Breed Chicken & Barley Entrée Dog Food per week.

44.     Plaintiff paid a premium for these Products because she believed that Defendants' Products would be a healthier alternative for her than other dog foods based on Defendants' labeling, advertising, and marketing representations and warranties described herein.

45.     Beginning in December, 2018 and up through February, 2019, her dogs suffered from severe health issues consistent with Vitamin D toxicity that included vomiting, diarrhea, excessive drooling, excessive thirst, and weight loss.

46.     Plaintiff stopped feeding her dogs the Products in February 2019, at which time they immediately recovered from their symptoms of Vitamin D poisoning.

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

47.    Had Plaintiff known that the Products were defective and dangerous for her dogs to consume, she would not have purchased the Products.  Plaintiff learned that these Products were identified in the Recall Notice prior to filing this Class Action Complaint.

## CLASS ACTION ALLEGATIONS

48.    Plaintiff seeks certification of classes under Fed.R.Civ.P. 23 on behalf of herself and on behalf of all other persons who purchased from retailers nationwide and in the State of California Defendant's Products (herein throughout, the "Classes").

49.    Excluded from the proposed Classes are Defendants, any entity in which Defendants have a controlling interest, Defendants' legal counsel, officers, directors, employees, assigns and successors; any persons and entities that purchased the Products at resale; the Judge(s) to whom this matter is assigned and any member(s) of the Judge's staff or immediate family; and Class Counsel.

50.    Plaintiff brings this action on behalf of the following proposed Classes:

a.    Nationwide Class: All persons in the United States who purchased the Products.

b.    California Subclass: All persons in California who purchased the Products.

51.    ***Numerosity***: Defendants manufactured and distributed the Products to retailers across the country and also sold them directly to tens of thousands of consumers.  Defendants have recalled at least 675,000 cases (13.5 million cans) of Products. Therefore, members of the Classes are too numerous to join in a single action. Members of the Classes may be identified through sales records from authorized retailers, veterinary practice prescription and sales records, and self-identification processes.  Members of the Classes can be notified about this action by mail or E-mail (which can be supplemented by published notice if this Court deems it necessary or appropriate).

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

52.     ***Commonality and Predominance***: Common questions of law and fact exist as to all proposed members of the Classes and predominate over questions that only affect individual members of the Classes. These common questions of law and fact include, but are not limited to and subject to amendment:

    a.  Whether the Products contained toxic levels of Vitamin D;

    b.  Whether Defendants' labeling, advertising, and marketing representations and warranties are false or misleading;

    c.  Whether Defendants breached any express warranties;

    d.  Whether Defendants breached any implied warranties;

    e.  Whether the Products were either diminished in value had no value as a dog food;

    f.  Whether Defendants owed a duty of care to Plaintiff and members of the Classes;

    g.  Whether Defendants breached that duty of care;

    h.  Whether Defendants were unjustly enriched as a result Plaintiff and members of the Classes purchasing the Products;

    i.  Whether Plaintiff and members of the Classes have sustained damages as a result of the conduct alleged herein and, if so, the appropriate measure of such damages;

    j.  Whether Defendants' conduct violated various state consumer protection statutes; and

    k.  Whether Plaintiff and members of the Classes are entitled to punitive damages.

53.     ***Adequacy***: Plaintiff is an adequate representative of the proposed Classes because her interests do not conflict with the interests of the members of the Classes she seeks to represent. Plaintiff has retained attorneys who are competent and experienced in handling complex and class action litigation, and they will prosecute this case vigorously on behalf of Plaintiff and members of the Classes.

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

54.     ***Typicality***: Plaintiff's claims are typical of the claims of the proposed Classes. Plaintiff and the members of the proposed Classes all purchased the Products, giving rise to materially similar claims.

55.     ***Superiority***: A class action is superior to other available means for the fair and efficient resolution or adjudication of this matter. The injuries suffered by each member of the Classes, while significant on an individual basis, are not large enough to render the pursuit of individual actions economically or judicially feasible. Even if members of the Classes could afford to undergo individualized litigation, the judicial system could not. In addition to the significant burden and expense of managing numerous actions that arise from materially similar questions of law and fact, individualized litigation risks inconsistent judgments. Individualized litigation will also increase the delay and expense to all parties and the judicial system presented by the legal and factual issues of this matter. However, the class action mechanism risks far fewer management difficulties and provides the benefits of a sole adjudication, economy of scale, and holistic supervision by a single court.

56.     In the alternative, the proposed Classes may be certified because: (1) The prosecution of separate actions by the individual members of the proposed Classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants; (2) The prosecution of individual actions could result in adjudications, which, as a practical matter, would be dispositive of the interests of non-party Class members or which would substantially impair their ability to protect their interests; and (3) Defendants have acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final relief with respect to the members of the proposed Classes as a whole.

57.     Defendants benefitted from the sale of the Products to Plaintiff and members of the Classes in a determinable amount.

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

## COUNT I

### Breach of Express Warranty

58.    Plaintiff, individually and on behalf of the Classes, repeats and realleges all previous paragraphs as if fully set forth herein.

59.    Defendants sold and Plaintiff and members of the Classes purchased Defendants' Products, which they represented and warranted in their labeling, marketing, advertising, and promotion that they were safe and healthy for consumption by dogs and/or were subject to regular and rigorous quality assurance and safety inspections.

60.    Defendants' Products did not conform to the above-delineated representations and warranties because they contained toxic levels of Vitamin D which is dangerous for consumption by dogs and ultimately led to Plaintiff's and members of the Classes' dogs suffering from severe health conditions and, in some cases, death.

61.    As a direct and proximate result of Defendants' breaches the described herein express warranties and the Products' failure to conform to these warranties, Plaintiff and members of the Classes have been damaged in that they did not receive the Products as expressly warranted and/or paid a premium price for Products when their value was diminished, they had no value for their intended purpose as a dog food, and incurred veterinary costs, prescription costs, and other related damages.

## COUNT II

### Breach of Implied Warranty

62.    Plaintiff, individually and on behalf of the Classes, repeats and realleges all previous paragraphs as if fully set forth herein.

63.    Defendants sold and Plaintiff and members of the Classes purchased Defendants' Products.

64.    At the time Defendants formulated, manufactured, advertised, marketed, sold, and distributed the Products, Defendants impliedly warranted that the Products

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

were of merchantable quality and safe and fit for the purpose of use as a dog food Plaintiff and members of the Classes.

65.     Plaintiff and members of the Classes believed that the Products were of merchantable quality and fit for their intended use as a dog food.

66.     Plaintiff and members of the Classes could not have known about the risks associated with the Products until after their dogs exhibited symptoms of Vitamin D poisoning.

67.     Neither Plaintiff nor members of the Classes altered the Defendants' Products after purchasing them and used them as instructed.

68.     Defendants' Products were not merchantable quality, did not pass without objection in the trade under the label description, were not of fair average quality within that description, were not fit for the ordinary and intended purpose as a dog food, and did not conform to the promises or affirmations of fact made on the label, advertising, marketing, and other representations and warranties because they contained dangerous levels of Vitamin D.

69.     As a direct and proximate result of Defendants' breaches of their implied warranties and the Products' failure to conform to such warranties, Plaintiff and members of the Classes have been damaged in that they did not receive the Products that were of merchantable quality and/or paid a premium price for Products when their value was diminished, they had no value for their intended purpose, and incurred veterinary costs, prescription costs, and other related damages.

## COUNT III

### Negligence

70.     Plaintiff, individually and on behalf of the Classes, repeats and realleges all previous paragraphs as if fully set forth herein.

71.     Defendants claim to utilize regular quality assurance and safety protocols intended to ensure that their Products are safe for dogs to consume and contain safe ingredients.

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

72.     Defendants owed a duty to Plaintiff and members of the Classes to formulate, inspect, label, advertise, market, manufacture, distribute, and sell products that are safe and fit for dogs to consume.

73.     Defendants failed to exercise due care, and were negligent in the formulation, inspection, manufacture, distribution, labeling, advertising, marketing, warranting, and sale of the Products to Plaintiff and members of the Classes.

74.     Defendants failed to implement adequate safety inspection procedures to test the Products for toxic levels of Vitamin D, resulting in such Products entering the stream of commerce for sale to Plaintiff and members of the Classes and for consumption by their dogs.

75.     Defendants knew or in the exercise of reasonable care should have known that their Products posed an unreasonable and unacceptable risk of injury or death to Plaintiff's and members of the Classes' dogs, and that their actions and/or omissions would foreseeably result in damages that could have been avoided.

76.     As a direct and proximate result of Defendants' breaches of their duty of care, Plaintiff and members of the Classes have been damaged and suffered ascertainable losses including payment for dangerous and defective Products, payment of veterinary costs, prescription costs, and other related damages.

## COUNT IV

### Unjust Enrichment

77.     Plaintiff, individually and on behalf of the Classes, repeats and realleges all previous paragraphs as if fully set forth herein.

78.     Plaintiff conferred benefits on Defendants by purchasing the Products at a premium price.

79.     Defendants had knowledge of and enjoyed such benefits.

80.     Defendants have been unjustly enriched in retaining monies derived from Plaintiff's and members of the Classes' purchases of the Products.  It would be unjust and inequitable for Defendants to retain those monies under these circumstances as a

result of Defendants' false and misleading representations and warranties described herein because the Products contained unreasonably high levels of Vitamin D that are harmful to dogs, which caused Plaintiff and members of the Classes to suffer injuries and losses because they would not have purchased the Products otherwise.

81.     Defendants should be required to return to Plaintiff and members of the Classes the amount they paid to purchase the Products or else be unjustly enriched.

## COUNT V

### Violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*

82.     Plaintiff, individually and on behalf of the California Subclass, repeats and realleges all previous paragraphs as if fully set forth herein.

83.     Plaintiff and each member of the California Subclass are "consumers" as defined in CLRA § 1761(d).

84.     The Products are "goods" as defined in CLRA § 1761(a).

85.     Defendants are "person[s]" as defined in CLRA § 1761(c).

86.     Plaintiff and each of the members of the California Subclass' purchases of the Products were "transactions" as defined in CLRA § 1761(e).

87.     Defendants' conduct violates the following provisions of the CLRA: (1) representing that goods have characteristics, uses, and benefits which they do not have (CLRA § 1770(a)(5)); (2) representing that goods are of a particular standard, quality, or grade, if they are not (CLRA § 1770(a)(7)); and (3) advertising goods with the intent not to sell them as advertised (CLRA § 1770(a)(9)).

88.     Defendants' conduct described herein was intended to induce consumers to purchase the Products.

89.     Defendants made material misrepresentations and omissions regarding the Products that they knew or should have known were deceptive and likely to cause consumers to purchase the Products in reliance on those misrepresentations and omissions.

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

90.     Defendants' conduct was done with conscious disregard of Plaintiff's rights and the rights of the members of the California Subclass.

91.     Plaintiff and members of the California Subclass have been directly and proximately damaged by Defendants' conduct.

92.     Pursuant to CLRA § 1780(a), Plaintiff seeks injunctive relief in the form of an order enjoining Defendants' conduct, and Plaintiff and members of the California Subclass will be irreparably harmed if such an order is not granted.

93.     On May 14, 2019, Plaintiff mailed Defendants notice of their violations of the CLRA in accordance with CLRA § 1782.  If Defendants fail to rectify their conduct within 30 days of receipt of this notice, Plaintiff will seek leave to amend this Class Action Complaint to claim damages under the CLRA.

94.     Plaintiff also seeks the recovery of court costs and reasonable attorneys' fees pursuant to CLRA § 1780(e).

## COUNT VI

### Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*

95.     Plaintiff individually and on behalf of the California Subclass, repeats and realleges all previous paragraphs as if fully set forth herein.

96.     California's FAL states that "[i]t is unlawful for any […] corporation […] to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated […] any statement […] which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading […]" FAL § 17500.

97.     Defendants' material misrepresentations and omissions described herein violate FAL § 17500.

98.     Defendants knew or in the exercise of reasonable care should have known that their conduct was false, deceptive, and misleading, including but not limited to their labeling, advertising, and marketing statements described herein.

99.    Defendants' misrepresentations and omissions are materially important to Plaintiff and members of the California Subclass and, therefore, reliance may be presumed.

100.    Plaintiff and members of the California Subclass lost money as a result of Defendants' conduct.

101.    Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17500, Plaintiff and members of the California Subclass seek an order requiring Defendants identify all Products that contain dangerous levels of Vitamin D through stringent testing and, pending such results, ensure all affected Products are removed from the stream of commerce.

102.    Unless such an order is granted, Defendants will continue to engage in conduct as alleged herein in violation of California's FAL.

103.    Plaintiff and members of the California Subclass request an order awarding restitution of any monies wrongfully acquired by Defendants as a result of its above-described misrepresentations and omissions.

104.    Plaintiff and the members of the California Subclass seek an order requiring Defendants to pay actual damages, statutory treble damages, attorneys' fees, and any other relief available.

## COUNT VII

### Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*.

105.    Plaintiff, individually and on behalf of the Classes, repeats and realleges all previous paragraphs as if fully set forth herein.

106.    California's UCL prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising prohibited by [California's FAL]."

107.    Plaintiff and members of the California Subclass lost money as a result of Defendants' conduct.

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

108.   Defendants' conduct constitutes "unlawful" practices within the definition set forth in the UCL because Defendants violated the FAL and the CLRA.

109.   Defendants' conduct constitutes "unfair" practices because they offend established public policy, are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers including Plaintiff and members of the California Subclass.

110.   The harm caused by Defendants' conduct outweighs any utility of such conduct and has and will continue to cause substantial injuries and losses to Plaintiff and members of the California Subclass unless restrained by this Court.

111.   Defendants' conduct is additionally "unfair" within the definition set forth in the UCL because Defendants violated the FAL and the CLRA.

112.   Defendants' conduct constitutes "fraudulent" practices within the definition set forth in the UCL because Defendant's labeling, advertising, and marketing misrepresentations and omissions described herein are false and likely to deceive the public, including Plaintiff and members of the California Subclass.

113.   As a result of Defendants' "unlawful," "unfair," and "fraudulent" conduct, Plaintiff and members of the California Subclass paid premium prices for the Products, which were worth substantially less than Defendants' labeling, marketing, and advertising would promise, or were entirely worthless as a dog food, and Plaintiff and members of the California Subclass did not obtain Products with the various qualities promised by Defendants.

114.   Plaintiff and members of the California Subclass lost money as a result of Defendants' conduct.

115.   Any injuries, damages, and/or losses suffered by Plaintiff and members of the California Subclass are not outweighed by any benefits to consumers, and the injuries, damages, and/or losses are those that consumers could not reasonably have avoided.

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

BLAKEMAN LAW 8383 Wilshire Blvd., Ste. 510, Beverly Hills, CA 90211
Telephone: 213-629-9922 | Web: www.lifeinsurance-law.com

116.   Defendants knew or in the exercise of reasonable care should have known that Plaintiff and members of the California Subclass could not have reasonably known or discovered that the Products contained dangerous levels of Vitamin D and were unsafe for consumption by dogs.

117.   Had Plaintiff and members of the California Subclass known that the Products contained dangerous levels of Vitamin D, they would not have purchased them.

118.   Defendants' wrongful business practices constitute a continuous course of unfair competition because Defendants label, advertise, market, and sell their Products in a manner which offends public policy, is done in a manner that is immoral, unethical, oppressive, unscrupulous, and/or injurious to consumers, including Plaintiff and members of the California Subclass.  Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff requests an order requiring Defendants to identify all Products that contain dangerous levels of Vitamin D through stringent testing and, pending such results, ensure all affected Products are removed from the stream of commerce.

119.   Plaintiff and members of the California Subclass request an order awarding restitution of any monies wrongfully acquired by Defendants as a result of their above-described misrepresentations and omissions, along with any other such relied permitted under the UCL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of herself and the proposed Nationwide Class and California Subclass, seeks the following relief:

A.   An order certifying the Nationwide Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Nationwide Class and California Subclass and Plaintiff's attorneys as Class Counsel;

B.   For an order of restitution and all other forms of equitable monetary relief;

C.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

D.      For an order awarding Plaintiff and the Classes' reasonable attorneys' fees, expenses, and costs of suit;

E.      For prejudgment and postjudgment interest on all awarded amounts;

F.      For an order requiring Defendant to identify all Products that contain toxic levels of Vitamin D through rigorous testing and to ensure that any affected Products are removed from the stream of commerce.

G.      For a declaration that Defendants' conduct is in violation of the statutes forming the basis of statutory violations described herein;

H.      For any further relief the Court may deem appropriate or necessary.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims that are triable.

DATED May 14, 2019.          */s/ Benjamin Blakeman*
                              Attorney for Plaintiff and the Proposed Class and Subclass